# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

GREAT NORTHERN INSURANCE COMPANY and
UNIQUE HOME DESIGNS, INC.

       Plaintiffs,

v.

NGL WAREHOUSE, LLC

       Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiffs, by and through counsel, Brett Godfrey and Aimee Bove of GODFREY | JOHNSON, P.C., for its Complaint for damages against Defendant, hereby allege and aver as follows:

## I. PARTIES

1. Plaintiff, Great Northern Insurance Company (hereinafter "Great Northern"), is an Indiana corporation with its principle place of business in Warren, New Jersey. Under Great Northern Policy # 3591-65-19 PHX, Unique Homes Designs, Inc. is subrogated to all of UHD's rights and causes of action in connection with the payments made under its policy of insurance for which NGL may have claims against third parties, including all settlement sums and defense expenses paid by Great Northern on behalf of UHD as more particularly described below.

2. Plaintiff, Unique Home Designs, Inc. (hereinafter "UHD") is a Delaware corporation

with its principal place of business in Gilbert, Arizona.

3. Defendant NGL Warehouse, LLC (hereinafter "NGL") is an Oregon limited liability company with its principal place of business in Broomfield, Colorado. NGL Warehouse may be served with process through its registered agent: Corporation Service Company, 1560 Broadway, Suite 2090, Denver, CO 80202.

## II. Jurisdiction and Venue

4. Jurisdiction is proper with this Court premised upon the diversity of citizenship of the parties hereto under 28 U.S.C. § 1332(a)(1) in that Plaintiff Great Northern's principal place of business is in the State of New Jersey, Plaintiff Unique Home Designs' principal place of business is in the state of Arizona and Defendant NGL Warehouse maintains its principal place of business in Broomfield, Colorado. Further, the amount in controversy herein exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Venue is proper in that the instant action arises under a written contract entitled "First Amended and Restated Warehouse Agreement" (hereinafter the "Warehouse Agreement") between NGL Warehouse and Unique Home Designs, a copy of which is appended hereto as Exhibit A. Section 14.02 of the Warehouse Agreement states that the federal courts located in Denver, Colorado have exclusive jurisdiction and venue of any action or proceeding arising from the Warehouse Agreement.

## III. Facts Common to All Claims

*A. Underlying Accident*

6. This action seeks contractual indemnity for settlement funds paid by and on behalf of Plaintiffs herein in a civil action that was lodged in the United States District Court for the

Southern District of Texas, Civil Action No. 7:13-CV-0226 (hereinafter "the Underlying Action").

7.  The Underlying Action arose out of the death of an employee at a Home Depot store located in Mission, Texas, who suffered fatal injuries on April 30, 2013, when he was trapped under a pallet of stacked doors that were designed by UHD and manufactured and packaged at the NGL Warehouse pursuant to the Warehouse Agreement.

8.  On information and belief, the pallet, packaging and doors were in the same general condition when they arrived at Home Depot as when shipped by NGL.

9.  Once the pallet of doors arrived at Home Depot, Mr. Valdez cut the clear plastic sheet wrap and plastic band which bound together all of the doors on the pallet. At that time the remaining doors on the pallet remained upright and stable. However, when Mr. Valdez removed a second door from the pallet, the remaining doors fell forward onto him as a result of improper and noncompliant shipping and packaging on the part of NGL.

10.  The estate of Mr. Valdez brought the Underlying Action against NGL, UHD, Home Depot and others, seeking damages for wrongful death under a variety of theories and claims.

B.  *Liability of NGL*

11.  The Warehouse Agreement provides at § 4.05 in relevant part:

> Customer shall provide to NGL in writing or by electronic transmission such as email or EDI any special instructions, procedures or requirements with respect to the storage and transportation of the Goods. The current special instructions, procedures and requirements (the "Customer Specific Requirements" or "SOPS"), are set forth on Exhibit D attached hereto and incorporated herein by this reference. NGL shall not be liable for any loss or damage as a result of acting in accordance with the SOPS. Customer shall from time to time, as necessary, provide NGL with current SOPS.

12. The Warehouse Agreement further specifies (at Article V) that NGL was required to purchase insurance coverage for the purpose of insuring the indemnity obligation created under Article XII of the contract. As mentioned above, the contract specifies that these attorneys' fees and costs of defense are part of the contemplated indemnification. Further, Article V states in relevant part:

> Article V. INSURANCE
>
> NGL shall obtain and maintain the following types of insurance:
>
> **Section 5.01** Commercial general liability insurance including premises/operations, broad form property damage, independent contractors, and contractual liability covering NGL's obligations hereunder for bodily injury and property damage, excluding Customer's Inventory, with a combined single limit of not less than One Million Dollars ($1,000,000) for each occurrence; . . .

13. The Warehouse Agreement also provides, in Art. XIV thereof in pertinent part as follows:

> Article XIV. Controlling Law
>
> Section 14.01. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Colorado, without regard to the conflicts of law principles hereunder. It is the intention of the parties that Article 7 of the Uniform Commercial Code, as adopted in Colorado shall apply to this Agreement.

14. In furtherance of the aforementioned provision and other terms of the Warehouse Agreement, UHD provided explicit Customer Specific Requirements intended to keep the palletized doors upright and stable, including during the removal of individual doors, which included, among other requirements, the following: (1) installing stop blocks in the front and rear of the pallets to ensure that the doors remained at a shallow angle, inclined away from the person

unloading the doors; and (2) securing the doors by wrapping each group of four doors with blue plastic wrap.

15. NGL failed to package the doors in accordance with UHD's Customer Specific Requirements, in that the individual groups of four doors were not separately wrapped and there were no stop blocks on the pallet. Without these contractually specified safety measures, the heavy vertical palletized doors did not remain upright and stable as Mr. Valdez commenced unloading them. Once the outer wrapping was removed, without additional wrapping on groups of doors, or stop blocks on the pallet, the entire tier of unconstrained doors was free to tip forward, and did so, crushing Mr. Valdez under their combined weight.

16. Mr. Valdez sustained fatal injuries as a direct result of NGL's failure to comply with the Warehouse Agreement.

### C.  *UHD's Right to Indemnification*

17. Warehouse Agreement § 12.01 addresses UHD's right to indemnification and defense from NGL in the Underlying Action. Specifically, § 12.01 provides in pertinent part that:

> Each party (the "Indemnitor") shall indemnify and hold the other party and any affiliated, controlling or subsidiary entities of such party, and the directors, employees, officers, agents, subcontractors, licensors and suppliers of all of them (in each case, the "Indemnitee") harmless from and against all liabilities, claims, suits, actions, fines, damages, losses, costs and expenses (including reasonable attorneys' fees) ("Damages") arising out of injury to or death of any person, or damage to or loss or destruction of any tangible personal property or improvements to real property (expect for lost or damaged Goods where liability is governed by Article III or V) *to the extent caused by or resulting from such party's willful misconduct or negligent acts or omissions or those of its employees or agents.* If the Indemnitor and the Indemnitee have, through their negligent acts or omissions, jointly contributed to any of the matters to be indemnified hereunder, the indemnification hereunder shall only be to the extent that the same

was not caused by the negligent acts or omissions of the Indemnitee.

18. UHD did not participate in, approve, or have knowledge of NGL's failure to comply with relevant shipping requirements when the pallet that killed Mr. Valdez was packaged for shipment, or at any other time prior to the death of Mr. Valdez.

19. No wrongful acts or omissions on the part of UHD contributed to the cause of Mr. Valdez's death.

20. The Underlying Action was commenced in a Texas state court on May 1, 2013, and removed to federal court on May 13, 2013. The original claims therein included claims against Home Depot, UHD's end customer, which in turn brought claims for contribution and indemnity related to the death of Mr. Valdez against UHD. Thereafter, the estate of Valdez brought direct claims against UHD, NGL and others.

21. In the defense of the Underlying Action, both Plaintiffs herein expended sums for attorneys fees and other costs of defense, as more particularly described herein.

22. Subsequent to the commencement of the Underlying Action, UHD formally tendered, for defense and indemnity, the claims against it in the Underlying Action to NGL pursuant to the Warehouse Agreement. UHD demanded NGL and its liability insurers participate in the negotiation of settlement of claims against UHD and Home Depot, advising NGL that if NGL and its insurers decline to participate, they would waive any objection regarding the manner in which the claims were defended or settled, while at the same time reserving Unique Home Design's right to pursue indemnification.

23. Neither NGL nor its insurers responded to the aforementioned tender.

24. In June, 2013, UHD filed a cross-claim against NGL for defense and indemnity

pursuant to the Warehouse Agreement. NGL answered that cross-claim in the form, *inter alia*, of a general denial.

25. On or about February 25, 2014, Unique Home Designs repeated its tender of the claims referencing an upcoming mediation and the fact that the Underlying Action was nearing settlement. The contemplated settlement would include payment by Unique Home Designs insurer in the amount of five million dollars. Furthermore, UHD made it clear if NGL Warehouse did not respond by close of business February 26, 2014, the settlement could be finalized and UHD reserved the right to pursue NGL and its insurers for reimbursement and/or indemnification per the Warehouse Agreement.

26. In response to the aforementioned repeat tender, neither NGL nor its insurers responded.

27. At or soon after a mediation of the claims that was conducted on or about January 14, 2014, the claims against UHD and Home Depot were resolved in the Underlying Action on the basis of the following payments: (a) The Home Depot defendants paid Plaintiffs Helen Valdez, Individually and as Representative of the Estate of John Gilbert Valdez, Sr., Deceased, Noe Samuel Valdez, and John Valdez, Jr. a total of Seven Hundred Fifty Thousand Dollars; (b) Unique Home Designs, Inc. paid Plaintiffs Helen Valdez, Individually and as Representative of the Estate of John Gilbert Valdez, Sr., Deceased, Noe Samuel Valdez, and John Valdez, Jr. a total of Five Million Dollars (which amount was expended, along with the costs of defending UHD in the Underlying Action, by Great Northern pursuant to its policy of insurance insuring UHD); and (c) on behalf of themselves and Unique Home Designs, Inc., the Home Depot defendants paid Intervenor Carmen Nevarez Valdez a total of Two Hundred Thousand Dollars.

28. On April 23, 2014, following the execution of a confidentiality agreement requested by UHD, counsel for NGL was made aware of these settlement payments.

29. As of the commencement of the Complaint in the instant matter, neither NGL nor its insurers have paid or promised to pay any sums in reimbursement or indemnification of the costs incurred on behalf of UHD in the defense and settlement of the Underlying Action.

30. Pursuant to the aforementioned settlement, the claims of the plaintiffs against UHD in the Underlying Action were dismissed with prejudice.

31. On September 5, 2014, Unique Home Designs and NGL Warehouse jointly stipulated to dismiss without prejudice the Third-Party Complaint by Unique Home Design against NGL Warehouse in order to give effect to the venue provision of the Warehouse Agreement, in that both NGL and UHD preferred to litigate the issues raised herein in federal court in Colorado. The stipulation for dismissal without prejudice expressly provided for the recommencement of litigation of the claims brought herein in this Court.

32. The underlying Texas suit brought claims for "injury to or death of any person" arising out of the acts and omissions of NGL Warehouse for purposes of §12.01 of the Warehouse Agreement. The facts alleged therein particularized that NGL failed to comply with the Warehouse Agreement and the Customer Specific Requirements for purposes of § 12.01 of the Warehouse Agreement.

33. The averments in the Underlying Action, if taken as true for determining an obligation to defend on the part of NGL and/or its insurers, asserted facts that would trigger the obligation to both defend and indemnify NGL on the part of UHD and its insurers. This was called to the attention of NGL and its insurers, but this triggering effect of the expressly cited

averments was ignored by both NGL and its insurers.

## IV. FIRST CLAIM OF RELIEF
## CONTRACTUAL INDEMNIFICATION

All other averments set forth herein are reiterated in this claim for relief as though stated verbatim.

34. Pursuant to § 12.01 of the Warehouse Agreement, NGL is liable to UHD for the costs of its defense in the Underlying Action, together with the costs and attorneys fees incurred in the defense of UHD and must indemnify UHD for the same. NGL Warehouse must "indemnify and hold [Unique Home Designs] harmless from and against all liabilities, claims, suits, actions, fines, damages, losses, costs and expenses (including reasonable attorneys' fees)."

35. The plaintiffs' claims in the underlying Texas suit constitute claims for "injury to or death of any person" arising out of acts and omissions of NGL as contemplated by § 12.01 of the Warehouse Agreement and other sections thereof. Because NGL is obligated under the Warehouse Agreement to defend and indemnify Unique Home Designs in accordance with the pertinent provisions of the Warehouse Agreement, it must now reimburse Plaintiffs herein for the sums paid in the defense and settlement of the Underlying Action.

36. The facts set forth above, as more particularly established in the Underlying Action, demonstrate NGL Warehouse failed to fully comply with the Warehouse Agreement and the Customer Specific Requirements for the purposes of § 12.01 of the Warehouse Agreement. NGL Warehouse did not comply with its manufacturing and packaging obligations under the Warehouse Agreement and the Customer Specific Requirements, which are incorporated into ¶ 4.05 of the Warehouse Agreement. As a result, Mr. Valdez suffered fatal injuries.

37. Because NGL Warehouse and it's insurers declined to either respond to UHD's

tender or participate in the settlement negotiations, NGL and its insurers waived any objection regarding the manner in which the claims were defended or the monetary amounts of settlement.

## V.  SECOND CLAIM OF RELIEF
## STATUTORY CONTRIBUTION

All other averments set forth herein are reiterated in this claim for relief as though stated verbatim.

38. In that UHD has paid more than its respective share of fault in the settlement of claims arising directly out of the negligent and otherwise wrongful conduct of NGL, UHD is entitled to statutory contribution.

39. As averred more specifically above, the rights and obligations of UHD and NGL are governed by the laws of Colorado.

40. Colo.Rev.Stat. § 13-50.5-102 states "(1)…where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them."

41. Should the Court determine that the right of contribution is governed by Texas law in view of the fact that the claims of Mr. Valdez's estate as asserted in the Underlying Action occurred in the state of Texas, Texas law provides for a right of contribution in a substantially similar fashion. *See, e.g.*, Chapter 33 of the Texas Civil Practice and Remedies Code ("CPRC").

42. In that UHD has paid, through its insurer, Great Northern, a sum that constitutes more than its respective share of fault, which fault is derived or imputed from the wrongful conduct of NGL as asserted in the Underlying Action, Plaintiffs are entitled to contribution from NGL.

## VI.  THIRD CLAIM FOR RELIEF
### EQUITABLE SUBROGATION

All other averments set forth herein are reiterated in this claim for relief as though stated verbatim.

43. The sums advanced in defense and settlement by Great Northern should have been paid by NGL's insurers pursuant to the primacy effect of the indemnity and insurance provisions of the Warehouse Agreement set forth above.

44. NGL and its insurers had a primary obligation to make the payments advanced by Great Northern in the defense and settlement of the Underlying Action.

45. Pursuant to Colorado law, Great Northern has a right of equitable subrogation against NGL and/or its insurers to recover the sums it paid in the defense and settlement of the claims in the Underlying Action.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor and against NGL in an amount which will justly and adequately compensate them for their damages and losses, including but not limited to the amounts paid in defense and settlement of the Underlying Action; two times that amount in connection with their claims of unreasonable claim denial; pre-judgment and post-judgment interest; costs of suit; attorneys fees and such other and further relief as this Court may deem proper under the circumstances.

**PLAINTIFFS DEMAND TRIAL TO A JURY OF ALL CLAIMS SO TRIABLE**

Respectfully submitted this 26th day of November, 2014.

GODFREY | JOHNSON, P.C.

/s/
Brett M. Godfrey
Aimee M. Bove
9557 S. Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax: (303) 228-0701
Email: godfrey@gojolaw.com