IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-03233-PAB-NYW

GREAT NORTHERN INSURANCE COMPANY and
UNIQUE HOME DESIGNS, INC.,

     Plaintiffs,

v.

NGL WAREHOUSE, LLC,

     Defendant.

---

## ORDER

---

     This matter comes before the Court on Plaintiffs' Motion to Exclude Defense Expert Testimony [Docket No. 152], wherein plaintiffs seek to prevent defendant NGL Warehouse, LLC ("NGL") from introducing certain opinion testimony of witnesses Joseph B. Michels, Ph.D. and Sher Paul Singh, Ph.D.

     The factual background of this case is contained in the Court's order on plaintiffs' summary judgment motion [Docket No. 140] and will not be recounted here except as relevant. Plaintiffs seek indemnification from NGL for a settlement payment and associated defense costs they paid to resolve a Texas lawsuit involving a fatal accident at a Home Depot store. The accident occurred when doors manufactured by plaintiff Unique Home Designs, Inc. ("Unique") fell onto and killed John Valdez, a Home Depot employee. Docket No. 140 at 1. At the time of the accident, Mr. Valdez was unloading the doors from a pallet that defendant NGL, a warehouse company, had packed. *Id*. NGL failed to follow the customer specific requirements ("SOPS") it received from

Unique requiring the doors to be packed at an angle using a stop block and wrapped in groups of four using blue inner wrapping material. *Id*. at 4-5.

After the fatal accident, Mr. Valdez's estate and his surviving relatives sued The Home Depot, Inc., Unique, and NGL (the "underlying action"). Docket No. 140 at 2. Home Depot filed third-party claims against the plaintiffs in the underlying action to recoup employee benefits it had paid[1] and against Unique for indemnification. Docket No. 154-4. Home Depot and Unique settled the claims against them in the underlying litigation, with Home Depot contributing $950,000 and Unique and its insurer, plaintiff Great Northern Insurance Company, contributing $5 million. Docket No. 1 at 7-8.[2]

Unique and NGL are parties to a Warehouse Agreement, which contains the following indemnification provision:

> Each party (the "Indemnitor") shall indemnify and hold the other party and any affiliated, controlling or subsidiary entities of such party, and the directors, employees, officers, agents, subcontractors, licensors and suppliers of all of them (in each case, the "Indemnitee") harmless from and against all liabilities, claims, suits, actions, fines, damages, losses, costs and expenses (including reasonable attorneys' fees) ("Damages") arising out of injury to or death of any person, or damage to or loss or destruction of any tangible personal property or improvements to real property (except for lost or damaged Goods where liability is governed by

---

[1]Home Depot alleged that it paid approximately $1 million in medical expenses, death benefits, and funeral costs from its self-funded ERISA benefit plan. Docket No. 154-4 at 5, ¶¶ 17-20. Home Depot alleged the benefit plan was entitled to be reimbursed from any recovery by plaintiffs in the underlying action. *Id*. at 8, ¶ 35-36.

[2]According to the testimony of Jamie Saenz, Unique's attorney in the underlying action, $5.75 million went to the plaintiffs in the underlying action and $200,000 went to settle the claims by Mr. Valdez's mother, who intervened. Docket No. 154-9 at 6-7, 105:10-106:4. NGL separately settled with Mr. Valdez's estate and the intervener in the underlying action, and Unique and NGL agreed to dismiss Unique's cross-claims against NGL in favor of the present lawsuit. *Valdez et al. v. Home Depot International Inc. et al.*, No. 7:13-cv-00226, Docket Nos. 127, 128, 136 (S.D. Tex.).

> Article III or V) to the extent caused by or resulting from such party's willful
> misconduct or negligent acts or omissions or those of its employees or
> agents.  If the Indemnitor and the Indemnitee have, through their
> negligent acts or omissions, jointly contributed to any of the matters to be
> indemnified hereunder, the indemnification hereunder shall only be to the
> extent that the same was not caused by the negligent acts or omissions of
> the Indemnitee.

Docket No. 105-1 at 13, ¶ 12.01.  The Warehouse Agreement is governed by Colorado

law.  *Id*. at 14, ¶ 14.01.

Unique and Home Depot are parties to a Supplier Buying Agreement ("SBA"),

which contains the following indemnification and defense provision:

> [Unique] will indemnify and defend [Home Depot] . . . from and against
> any and all claims or allegations made by any person (including those
> made by [Unique's] directors, officers and employees), losses, damages,
> suits, fees, judgments, costs and expenses (including attorneys' fees
> incurred in responding to such claims) that [Home Depot] may suffer or
> incur arising or alleged to have arisen out of or in connection with (a) any
> personal injury (including death) or damage to property arising out of the
> acts or omissions of [Unique], its employees and agents, contractors,
> subcontractors and/or any other persons for whose conduct [Unique] may
> be or is alleged to be legally responsible . . . . This agreement to
> indemnify, defend and hold [Home Depot] and its affiliates harmless
> applies whether or not the claim or loss was alleged to have been caused
> in whole or in part by the negligence or fault of [Home Depot].

Docket No. 154-2 at 8, ¶ 6.1.

On November 7, 2016, plaintiffs filed their motion to exclude.  Docket No. 152.

NGL does not oppose the exclusion of the opinions of Dr. Michels identified by plaintiffs.

Docket No. 157 at 2.  Accordingly, the Court will grant the motion with respect to the

opinions of Dr. Michels identified by plaintiffs.

Plaintiffs argue that (a) certain of Dr. Singh's opinions about the packing of the

doors and Home Depot's and NGL's alleged negligence are irrelevant because the only

issue in this case is whether NGL must indemnify Unique for its contribution to the

3

settlement of the underlying action, Docket No. 152 at 7-10; (b) NGL fails to establish

that any of Home Depot's failures caused the accident and are therefore irrelevant, *id*. at

10-11; (c) Dr. Singh's opinions lack a reliable methodology, *id*. at 12-13; and (d) two of

Dr. Singh's purported opinions are really fact statements that are not the proper subject

of expert testimony. *Id*. at 4.

Defendant responds that Home Depot's alleged negligence is relevant because

part of plaintiffs' $5 million payment in the underlying action is attributable to Home

Depot's negligence, for which NGL has no duty to indemnify Unique. Docket No. 157 at

5-6 (citing Docket No. 154).

## I.  FEDERAL RULE OF EVIDENCE 702

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience,
training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help
the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data; (c) the testimony is the
product of reliable principles and methods; and (d) the expert has reliably
applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an

expert be qualified based upon knowledge, skill, experience, training, or education to

give opinions in a particular subject area. Rather, the Court must "perform[ ] a two-step

analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).

After determining whether the expert is qualified, the specific proffered opinions must be

assessed for reliability. *See id*.; Fed. R. Evid. 702 (requiring that the testimony be

"based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable.  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).  When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94).

These considerations are not exhaustive.  Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*

A court must also determine whether the proposed expert testimony will assist the trier of fact.  *Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006).  To do so, courts consider, among other things, whether the testimony is relevant.  *Id*.  "Relevant expert testimony must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *U.S. v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal quotation marks and citations omitted).

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); a proponent of expert testimony need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied."  *Crabbe*, 556 F. Supp. 2d at 1221.

6

## II. ANALYSIS

### A.  Reasonableness of the NGL's Packing

Plaintiffs' motion seeks to exclude three opinions related to whether NGL's

packaging of the doors, which did not conform to the SOPS, was reasonable:

> It is my understanding based on my inspection that the pallet at issue did
> not have a stop block as alleged by plaintiff's experts on the top deck of
> the pallet that would have allowed the doors to tilt backwards. In its
> absence the doors were stacked vertically next to each other when they
> arrived at the Home Depot store at issue in this case. *This method of
> packaging doors does not violate any industry regulation, test method or
> industry specification.*

Docket No. 152-3 at 22, ¶  34 (emphasis added).

> There was no damage to doors or the shipment at issue when it arrived at
> the Home Depot store and was accepted by the Home Depot personnel.
> *This method of packaging as used by NGL was reasonable and more
> efficient in transportation and material utilization to meet today's goals of
> saving the environment from excessive material waste as well as
> providing for sustainability.*

*Id*. (emphasis added)

> The palletized and unitized load at issue was accepted without having any
> physical damage during transportation and handling that included various
> cross docking by the carrier Averitt Express untill [sic] it reached the store
> at issue in this case. *It is therefore clear that the packaging method used
> by NGL was appropriate for safe shipment and handling for the product at
> issue.*

*Id*. at 23, ¶ 35 (emphasis added)

The Court finds that the first of these opinions is proper because it is relevant and

based on a reliable methodology.  While industry standards are not dispositive on the

issue of reasonable care, they are relevant.  *Yampa Valley Elec. Ass'n, Inc. v. Telecky*,

862 P.2d 252, 257 (Colo. 1993) (citations omitted).  Dr. Singh's report discusses various

sources of industry regulation, test methodology, and industry specification in relation to the pallet at issue.  Docket No. 152-3 at 18-22, ¶¶ 26-33.  This discussion shows that Dr. Singh has obtained the sufficient data to render an opinion on whether industry standards conflicted with NGL's non-conforming palletization.  *See Crabbe*, 556 F. Supp. 2d at 1223.  In applying the industry standards, he discusses, for example, how the International Safe Transit Association ("ISTA") Test Procedure 1E "is not intended to cover safe loading or unloading of doors from the palletized configuration" and "does not address anything related to an angular stacking."  Docket No. 152-3 at 21, ¶ 31.  While his discussion is limited to general summaries of the relevant standards, it is sufficient to show that Dr. Singh considered potential violations of industry standards without taking logical leaps to reach unfounded conclusions.  *Crabbe*, 556 F. Supp. 2d at 1224; *see also Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1151 (D. Colo. 2006). Therefore, the Court will not exclude this opinion under Rule 702.

The Court finds, however, that the second and third opinions are irrelevant. These opinions focus on whether the doors were protected during shipment before arriving at Home Depot.  Damage to the doors was not the issue of the underlying lawsuit and plaintiffs do not seek any recovery on that basis.  *See* Docket No. 154-4 at 3-8.  Rather, the issue in the underlying lawsuit was why the doors fell on Mr. Valdez and caused his death.  *Id*.  The issue in this case, therefore, is not whether NGL's packing of the doors was reasonable in protecting the doors, but whether NGL packed the subject doors with due care for the safety of employees such as Mr. Valdez.  *See* Docket No. 140 at 16.  Regardless of whether NGL took reasonable care in protecting

8

the doors, that has no bearing on whether NGL acted with reasonable care with respect

to those who would be unpacking the doors.  The Court will therefore exclude these two

opinions.  *See Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1223 (10th Cir. 2016)

("Expert testimony which does not relate to any issue in the case is not relevant and,

ergo, non-helpful." (quoting *Daubert*, 509 U.S. at 591)).

### B.  Evidence of Home Depot's Negligence

Plaintiffs' motion seeks to exclude two of Dr. Singh's opinions related to Home

Depot's alleged negligence:

> It is my opinion that Home Depot failed to have a proper incoming quality
> control process to accept a palletized and unitized load that was not made
> to [Unique]'s specifications as stated in [Unique]'s allegations.

Docket No. 152-3 at 22, ¶ 35.

> Because Home Depot and its employees including Mr. Valdez had
> accepted this load and needed to safely unpack the doors, proper
> material handling equipment such as tilt tables shown in Figures 2 and 3
> should have been used that would have averted this accident preventing
> doors from falling out and striking Mr. Valdez.

*Id*. at 23, ¶ 36.

Defendant's theory is that some portion of the $5 million contributed by plaintiffs

"was expended towards settlement of claims for which [Unique] is not entitled to

indemnity from NGL."  Docket No. 157 at 6.  Specifically, NGL asserts that, under the

SBA, Unique has a duty to indemnify Home Depot for both Unique's negligence and

Home Depot's negligence.  Docket No. 154 at 14-15.  In support of this argument, NGL

cites Section 6.1 of the SBA: "This agreement to indemnify, defend and hold [Home

Depot] and its affiliates harmless applies whether or not the claim or loss was alleged to

9

have been caused in whole or in part by the negligence or fault of [Home Depot]."
Docket No. 154-2 at 8, ¶ 6.1.  NGL interprets this sentence to require Unique to
indemnify Home Depot for its own negligence.  Docket No. 154 at 15.  Assuming NGL's
interpretation is correct,[3] the Court nevertheless rejects NGL's argument.

    First, NGL fails to show that any portion of plaintiffs' $5 million settlement
payment indemnified Home Depot for its own negligence.  As the proponent of Dr.
Singh's opinions regarding Home Depot's negligence, NGL has the burden to
demonstrate their relevance.  *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012)
("Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis
– requirements that must be met before the jury is allowed to hear and perhaps be
persuaded by the expert testimony.").  To show that plaintiffs paid a portion of the $5
million to settle claims based on Home Depot's negligence, defendant relies on
deposition testimony of Jamie Saenz and Unique.  Docket No. 157 at 4.  Mr. Saenz
testified that the settlement included a provision for the "dismissal with prejudice of
[Home Depot's] cross-claim . . . against Unique" for indemnification.  Docket No. 154-9
at 8, 107:1-2.  He also testified that the settlement included Home Depot's release of its
ERISA reimbursement claims.  *Id.* at 7, 106:16-25.  The Rule 30(b)(6) deposition of

---

[3] "An indemnity provision that a party contends renders the indemnitor liable for
the indemnitee's conduct must contain 'clear and unequivocal language to that effect.'"
*Lafarge N. Am., Inc. v. K.E.C.I. Colorado, Inc.*, 250 P.3d 682, 686 (Colo. App. 2010)
(quoting *Public Service Co. v. United Cable Television of Jeffco, Inc.*, 829 P.2d 1280,
1283 (Colo. 1992)).  Further, such agreements "must be strictly construed" and "should
not be construed to permit an indemnitee to recover for his own negligence unless the
court is firmly convinced that such an interpretation reflects the intention of the parties."
*Public Service Co.*, 829 P.2d at 1283-84 (internal quotation marks omitted).  Based on
the Court's ruling below, there is no need to interpret this clause.

10

Unique provides the same information.  Docket No. 154-3 at 5-6.  Unique's corporate

representative testified that the agreement prevented Home Depot from seeking

reimbursement from Unique of the $950,000 Home Depot contributed to the settlement.

*Id*. at 6, 30:3-6  ("I wanted to add that as [an] extra measure, that [the] five million [was]

exhaustive of what Chubb[4] and Unique and the Home Depot, by and through Chubb,

would pay.").  None of the cited testimony shows that plaintiffs contributed funds to settle

claims against Home Depot for Home Depot's negligence or that Home Depot's third-

party claim against Unique was based on Home Depot's negligence.[5]

       To the contrary, Home Depot's claim against Unique in the third-party complaint

sought indemnification for the acts or omissions of Unique (or its subcontractors, like

NGL), not for any alleged negligence of Home Depot.  The third-party complaint alleged

that the "pallet and packaging of the Unique Home Design doors were in the same

condition as when they arrived at the Home Depot store" up until the time Mr. Valdez

began removing the doors.  Docket No. 154-4 at 4, ¶ 10.  Home Depot also alleged that

the packaging was deficient and that Mr. Valdez "died as a direct result" of that failure.

---

       [4]Great Northern Insurance Company is a subsidiary of Chubb Group of
Insurance Companies.

       [5] Plaintiffs have designated for trial deposition testimony of Tammy Hanson, the
Chubb Group claims adjuster who handled this claim, that the settlement payment did
not include "any money for a settlement of the liability that could be apportioned to
Home Depot."  Docket No. 208-3 at 15, 56:5-8.  She further testified the "settlement
was based solely on liability that could be assessed against Unique Home
Designs caused by the negligence of NGL's failure to properly follow procedures and
palletize and wrap my insured's product."  *Id.*, 55:25-56:4.

*Id*. at 6, ¶¶ 25, 28.[6]  While the third-party complaint cites that portion of ¶ 6.1 of the SBA

that refers to indemnification for claims for which Unique may be legally responsible, it

does not cite the language NGL relies upon regarding indemnification for Home Depot's

negligence.  *Id*. at 6-7, ¶¶ 29, 33.  In fact, Home Depot's indemnification claim against

Unique did not mention any claims for indemnification based on Home Depot's

negligence.  Given that there is no proof that plaintiffs paid a portion of the $5 million to

indemnify Home Depot for its own negligence, testimony about Home Depot's

negligence would be irrelevant and confusing to the jury.  Thus, NGL, as the proponent

of Dr. Singh's opinions regarding Home Depot's negligence, fails to show that such

opinions are relevant to NGL's indemnification obligation.

Second, and independently, even if plaintiffs paid part of the $5 million to

indemnify Home Depot for its own negligence, such payment would nevertheless be

within the scope of the Warehouse Agreement.  Dr. Singh's opinions that Home Depot

should have had better quality control to detect the improperly packed doors and should

have used material handling equipment to prevent the improperly packed doors from

falling are not opinions that Home Depot's actions were independent causes of Mr.

Valdez's death.  Docket No. 152-3 at 22-23, ¶¶ 35-36.  Rather, they are opinions about

steps that Home Depot could have taken to mitigate the risk of the doors falling.  The

party that created the risk in the first place was NGL, not Home Depot.  At most, these

---

[6] Home Depot's ERISA reimbursement claim against the plaintiffs in the underlying action related to payments made due to the injuries and death of Mr. Valdez. *See* Docket No. 154-4 at 5, ¶¶ 18-20.  To the extent NGL argues that it is not liable for any contribution made by plaintiffs that is related to the release by Home Depot of any right to seek reimbursement of those claims from Unique, there is likewise no evidence that the ERISA reimbursement claim was based on any negligence by Home Depot.

opinions would show that Home Depot's negligence was an additional cause, as opposed to an independent cause, of the fatal injuries. But NGL's theory that Home Depot was negligent in failing to detect or mitigate the risks from the pallet does not change the fact that NGL's alleged negligence in packing the pallet created the risk of the doors falling on Mr. Valdez. *Id*. Under the indemnification clause of the Warehouse Agreement, NGL indemnifies Unique against claims "resulting from" NGL's negligence. Docket No. 105-1 at 13, ¶ 12.01. In *Burlington Northern R.R. Co. v. Stone Container Corp.*, 934 P.2d 902, 903-04 (Colo. App. 1997), a railroad worker was injured by an obstruction on the landowner's property. The trial court found that a landowner had to indemnify the railroad for all injuries to the railroad worker on his property, even though the underlying suit included claims against the railroad for negligence, because the indemnification agreement provided for indemnification for injuries arising "directly or indirectly" from a breach by the landowner. *Id*. at 904. The appeals court agreed with the trial court that the employee's injuries arose "indirectly" from the landowner's breach of the agreement and were therefore within the scope of the indemnification agreement. *Id*. at 905. The Warehouse Agreement's provision for indemnification for injuries "resulting from" a party's negligence has a similar effect here. The Court finds that the term "resulting from" in the Warehouse Agreement is appropriately construed to include harms caused by Home Depot's alleged failure to detect or prevent the dangerous condition allegedly caused by the negligent packing of the doors. Therefore, evidence of Home Depot's negligence would have no bearing on whether the $5 million settlement was "reasonable" and is therefore irrelevant. The Court will exclude Dr. Singh's opinions related to Home Depot's alleged negligence.

### C.   Unique's Involvement in Developing Shipping Standards

Plaintiffs' motion seeks to exclude two of Dr. Singh's opinions related to whether

Unique worked to develop standards with the ISTA:

> The various claims by [Unique] (UHD00210) that they worked with ISTA in
> 2009 to develop new standards applicable to the shipment at issue are
> FALSE.  I am a past elected officer of ISTA.  I met with the past Executive
> Director and current President of ISTA (Mr. Edward Church and Mr. A. J.
> Gruber) on September 21, 2015, who denied any such activity conducted
> by Home Depot or [Unique] with ISTA.

Docket No. 152-3 at 23, ¶ 37 (emphasis added).

> The claim that the palletization and shipment of doors such as this case is
> regulated by International Safe Transit Association (ISTA) is FALSE.
> ISTA does not produce any such regulations.  In fact ISTA is an
> association that develops pre-shipment consensus testing methods for
> transportation and handling to reduce or avoid damage to product.  It does
> not engage in any test method or practice that relates to packing or
> unpacking of product or packages.  I have worked as an ISTA member
> and officer for over 25 years and find this assertion misleading and
> inappropriate.

*Id*., ¶ 38 (emphasis altered).

Plaintiffs claim that these opinions are not proper expert testimony because they

are "speculation related to the existence of a fact."  Docket No. 165 at 6.  "Unlike an

ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions,

including those that are not based on firsthand knowledge or observation."  *Daubert*, 509

U.S. at 592.  Further, Rule 702 allows for testimony based on "specialized knowledge,"

and Dr. Singh's report shows that he has such knowledge with respect to the operations

and responsibilities of the ISTA and he applies it to opine on whether certain facts are

true.  *See* Docket No. 152-3 at 20-23.  Therefore, the Court will deny plaintiffs' motion to

14

exclude these opinions on the basis that they are not actual expert opinion, lack sufficient underlying data, and use an unreliable methodology.

## III.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion to Exclude Defense Expert Testimony [Docket No. 152] is **GRANTED** in part and **DENIED** in part as indicated in this order.


DATED January 18, 2017.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge